EXHIBIT A

KEVIN K. ROBSON (6976)
J. ANGUS EDWARDS (4563)
**JONES WALDO HOLBROOK & MCDONOUGH, P.C.**
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Tel.: (801) 521-3200
krobson@joneswaldo.com
aedwards@joneswaldo.com

*Attorneys for the Plaintiff*

### IN THE EIGHTH DISTRICT COURT

### IN AND FOR UINTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| BRETT NIELSEN,<br><br>　　　　Plaintiff,<br>v.<br>REMINGTON ARMS COMPANY, LLC, a Delaware Limited Liability Company; and DOES I-X,<br>　　　　Defendants. | **COMPLAINT AND<br>JURY DEMAND<br>(TIER 3 CLAIMING $300,000 OR MORE IN DAMAGES)**<br><br>Case No. _____<br><br>Judge _____ |

　　　　Plaintiff Brett Nielsen ("Plaintiff"), by and through J. Angus Edwards of Jones Waldo, hereby complains of Defendant Remington Arms Company, LLC ("Defendant") and alleges as follows:

### PARTIES

　　1.　　Plaintiff Brett Nielsen is a resident of Uintah County, Utah.

　　2.　　Defendant Remington Arms Company, LLC is a Delaware Limited Liability Company with its place of business in Madison, North Carolina.  Defendant is engaged in the manufacture, design, testing, assembling, distributing, selling, and marketing of rifles and ammunition.

　　3.　　Defendant Does I-X are entities or individuals who are currently unknown to Plaintiff who are subject to liability in this action for designing, manufacturing, or selling the products, or

1491014.1

components of products, that caused or contributed to Plaintiff's injuries, including Defendant's affiliates, subsidiaries, and parent companies.

## TIER ELECTION

4. Plaintiff claims his damages exceed "$300,000.00 or more in damages" and therefore qualify for Tier 3 discovery pursuant to Rule 26(c)(3) of the Utah Rules of Civil Procedure.

## JURISDICTION AND VENUE

5. Plaintiff resides, and suffered injuries, in Uintah County, Utah.

6. This Court has jurisdiction pursuant to §78A-5-102.

7. Venue before this Court is invoked pursuant to § 78B-3-307.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

8. On January 15, 2018, Plaintiff and his minor son shot a Remington 300 Ultra Mag, no. S6570669 ("the Rifle") owned by Plaintiff.

9. The Rifle was manufactured and sold by Defendant.

10. The Rifle exploded as it was fired by Plaintiff's son (the "Explosion").

11. After Plaintiff purchased the Rifle at a retail store, he purchased a scope and muzzle brake that were installed by the seller.

12. Before the Explosion, the Rifle was loaded with Remington brand, 180 grain Accubond ammunition (the "Ammunition").

13. Remington manufactured and sold the Ammunition.

14. The Ammunition had been purchased by Plaintiff from a retail store and was owned by him at the time of Explosion.

15. The Explosion happened at Plaintiff's home in North Gusher, Utah.

16. Plaintiff had a location at his home where he had placed targets and he and his family used it for firearms practice that was being used by Plaintiff and his son prior to, and at the time of, the Explosion.

17. Prior to the Explosion, Plaintiff loaded the Rifle with the Ammunition and shot it, at least two times, to ensure that it was accurately sighted for a planned hunting trip later in the month.

18. At the time of the Explosion, Plaintiff's son was in a prone position on a sled and blanket.

19. At the time of the Explosion, Plaintiff was standing at least 15-20 feet behind his son.

20. The Explosion happened suddenly and without any warning.

21. At an inspection during March 2019, attended by counsel for Plaintiff and Defendant and others, the parties observed the cartridge in the Rifle at the time of Explosion and that it was blocking the Rifle's barrel (the "Cartridge").

22. Upon removal of the Cartridge from the barrel, the Cartridge showed evidence that metal from its case head had been transformed into shrapnel by the Explosion.

23. Immediately after shooting the Rifle, Plaintiff's son was yelling in pain, grabbing his eyes, and rolling on the ground, because of the Explosion.

24. Plaintiff brushed splinters off his son's face caused by the Explosion.

25. Plaintiff noticed that the Rifle was shattered by the Explosion and as he helped his son he noticed that his pants were soaking with blood.

26. The Explosion caused the shrapnel from the Cartridge to penetrate Plaintiff's left groin, his left side exiting his rectum, and his right elbow.

27. The Explosion caused powder burns to Plaintiff.

28. The Explosion caused Plaintiff's son to suffer shrapnel injuries and powder burns to his face.

29. The shrapnel injury to Plaintiff's left groin severed the femoral vein, barely missing the femoral artery, and it was a life-threatening injury.

30. Plaintiff's initial treatment was by BIA officers or EMS prior to his transportation by a BIA Ambulance to Uintah Basin Medical Center, Roosevelt, Utah.

COMPLAINT
3

31. After less than an hour of treatment at the Uintah Basin Medical Center, Plaintiff was transported by helicopter to Intermountain Medical Center ("IMC") in Salt Lake City, Utah.

32. At IMC, Plaintiff received in-patient treatment for a major laceration of the femoral vein with a small metallic foreign body projecting over the left interior pubic ramus and a right elbow foreign body.

33. Plaintiff was not discharged from IMC until January 16, 2018

34. Plaintiff has shrapnel in his elbow and hip that was not removed during his medical treatment after the Explosion.

35. Plaintiff continues to have pain at the shrapnel penetration sites on his body and has required, and in the future will continue to require, medical treatment for his shrapnel injuries.

36. Plaintiff continues to suffer from leg pain and numbness in his right hand and additional testing and surgery may be necessary to treat these conditions.

37. Plaintiff's expenses for past medical treatment exceed $61,347.

38. Plaintiff's injuries reduced his self-employment income for many months after the Explosion and he suffered lost income in excess of $10,500.

39. Plaintiff's estimated future medical expenses are $46,795.

40. Plaintiff paid approximately $1,800 for the Rifle that was destroyed during the Explosion.

41. The Rifle and Ammunition were not modified nor repaired before the Explosion, other than the installation of the scope and muzzle brake.

42. Plaintiff is experienced in the use of firearms, including employment as a professional hunting guide for more than 15 years.

43. Plaintiff had not noticed any problems with the Rifle and Ammunition prior to the Explosion.

44.  The only warning Defendant provides on the box in which the Ammo is sold is "Warning: Keep Out of Reach of Children."

45.  After the Explosion, gunsmiths inspected the Rifle, including the Cartridge blocking the barrel, and opined that the cause of the Explosion was that the Ammunition had pressure well in excess of the design pressure.

## FIRST CAUSE OF ACTION: PRODUCT LIABILITY

46.  Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

47.  Defendant was engaged in the business of designing, testing, manufacturing, assembling, marketing, distributing, and selling rifles and ammunition, and it did design, test, manufacture, assemble, market, distribute and sell the Rifle and Ammunition.

48.  Defendant had a duty to place into the stream of commerce, including designing, testing, manufacturing, assembling, marketing, distributing, and selling, rifles and ammunition that were neither defective nor unreasonably dangerous when put to the use for which they were designed, manufactured, marketed, and sold, and for all foreseeable uses.

49.  Defendant expected the rifles and ammunition it was designing, manufacturing, marketing, and selling to reach, and they did in fact reach, users and consumers in the State of Utah with no change in their condition from the time of their design and manufacture through the time they were distributed and sold.

50.  At the time the Rifle and Ammunition entered the stream of commerce, they were in an unreasonably-dangerous condition.

51.  At the time the Rifle and Ammunition were distributed and sold to Plaintiff, they were not fit for their intended use and therefore were defective and unreasonably dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, within the meaning of §§ 78B-6-702 and 703, for the following reasons: (a) the Rifle and Ammunition were not reasonably safe as intended to be used; (b) the Rifle and Ammunition had an inadequate design

and/or were inadequately manufactured for the purpose of their use, because the Explosion happened; (c) the Rifle and Ammunition contained an unreasonably dangerous design and/or manufacturing defects, which resulted in an unreasonably high probability of failure; (d) there were no warnings about the risk of injury from an explosion; and (e) the Rifle and Ammunition were insufficiently tested.

52. As a result of these defects, the Rifle and Ammunition were unreasonably dangerous.

53. As a result of these defects, when used in a way reasonably foreseeable to Defendant the Rifle and Ammunition failed to perform safely as an ordinary and reasonable person would expect.

54. The defects in the Rifle and Ammunition were present at the time Defendant distributed and sold them.

55. The Rifle and Ammunition were expected to and did reach the ultimate user and consumer without substantial change in the condition in which they were sold and distributed.

56. Defendant knew, or reasonably should have known, of the danger posed by use the Rifle and Ammunition.

57. The defects in the Rifle and Ammunition were a direct and proximate cause of Plaintiff's injuries.

58. Upon information and belief, the defective and unreasonably dangerous nature of the Rifle and Ammunition were the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifested a knowing and reckless indifference toward, and disregard of, the rights of others, as will be demonstrated by clear and convincing evidence at trial. Accordingly, pursuant to Utah Code Ann. § 78B-8-201, Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION: NEGLIGENCE

59. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

60. Defendant had a duty to exercise due care in designing, testing, manufacturing, assembling, marketing, and selling the Rifle and Ammunition such that they would be reasonably safe for their intended use.

61. Defendant's negligence in designing, testing, manufacturing, assembling, marketing, and selling the Rifle and Ammunition, caused them to be unreasonably safe as intended to be used to prevent the injuries they caused Plaintiff, including failing to warn Plaintiff of the risk of injury from an explosion.

62. Defendant knew or had reason to know that the safety and protection of Plaintiff would depend upon the effectiveness and safe quality of the Rifle and Ammunition and warning of the risk of injury from an explosion.

63. Defendant failed to exercise reasonable care in their design, manufacture, assembly, testing, marketing, and selling of the Rifle and Ammunition and Defendant's negligence was the direct and proximate cause of Plaintiff's injuries.

### THIRD CAUSE OF ACTION: BREACH OF WARRANTIES

64. Plaintiff incorporates by reference the preceding allegations as if set forth fully herein.

65. At the time of placement of the Rifle and Ammunition into the stream of commerce, and at the time of Plaintiff's injuries, Defendant knew or should have known that users and consumers of rifles and ammunition, including Plaintiff, would rely upon its skill or judgment to select and furnish suitable rifles and ammunition, within the meaning of § 70A-2-315.

66. Defendant was a "merchant" of rifles and ammunition within the meaning of § 70A-2-104(1).

67. The Rifle and Ammunition were not merchantable in that they were not of "fair average quality" and not fit for the ordinary purpose for which they were to be used, they were not adequately contained or labelled to warn users and consumers such as Plaintiff of the risk of injury

created by the Rifle and Ammunition, and did not conform to the promises or affirmations of fact made on the container or label, within the meaning of § 70A-2-314.

68.     Defendant impliedly warranted that the Rifle and Ammunition were fit for the particular purpose and merchantable as required for use by users and consumers.

69.     At the time of placement of the Rifle and Ammunition into the stream of commerce, and at the time of Plaintiff's injuries, the Rifle and Ammunition were not fit for the particular purpose and were unmerchantable for their required use by users and consumers.

70.     As a result of the defects in the Rifle and Ammunition and their failure to comply with warranties of merchantability and fitness for a particular purpose, Plaintiff was injured.

## DAMAGES

71.     As a direct and proximate result of the Defendant's wrongdoing, Plaintiff has sustained damages, including, but not limited to the following: (a) general damages in an amount to proven at trial, including for Plaintiff's pain and suffering; (b) special damages for past and future medical care and related expenses in an amount to be proven at trial, including Plaintiff's past medical bills that exceed $61,347, estimated future medical expenses of $46,795, and the $1,800 cost of the Rifle; (c) special damages for present and future economic losses in an amount to be proven at trial, including past lost income of $10,500; (d) punitive damages in an amount to be proven at trial; (e) pre- and post-judgment interest to the extent allowed by law; (f) costs, expenses and attorney's fees to the extent allowed by law; and (g) such other and further relief as may be deemed just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

72.     As a direct and proximate result of the Defendant's wrongdoing, Plaintiff sustained multiple injuries with life-long consequences. The Plaintiff is entitled to recover his damages in this matter, in amounts to be proven at trial: (a) general damages, including for Plaintiff's pain and

suffering; (b) special damages for past and future medical care and related expenses, including Plaintiff's past medical bills that exceed $61,347, estimated future medical expenses of $46,795, the $1,800 cost of the Rifle; (c) special damages for present and future economic losses, including past lost income of $10,500; (d) punitive damages; (e) pre- and post-judgment interest to the extent allowed by law; (f) costs, expenses and attorney's fees to the extent allowed by law; and (g) such other and further relief as may be deemed just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests that a jury be empaneled to try the above-entitled action and hereby tenders the statutory fee.

DATED this 9th day of December, 2019.

**JONES WALDO HOLBROOK & McDONOUGH, P.C.**

 /s/ J. Angus Edwards
Kevin K. Robson
J. Angus Edwards
Attorneys for Plaintiffs

COMPLAINT
9

1491014.1